1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

8   LORENE MCCALL,                                )
9                                                 )
                        Plaintiff,                )       Case No.: 2:16-cv-01058-JAD-GWF
10                                                )
    vs.                                           )       **ORDER**
11                                                )
12  STATE FARM MUTUAL AUTOMOBILE                  )
    INSURANCE COMPANY,                            )
13                                                )
                        Defendant.                )
14  _____)

15          This matter is before the Court on the following motions:  (1) Defendant State Farm's Motion to

16  Quash Plaintiff's Subpoena to Certified Medical Consultants Inc. (ECF No. 17), filed on June 12, 2017;

17  (2)  Defendant State Farm's Motion for Protective Order as to Plaintiff's Rule 30(b)(6) Deposition

18  Subpoena to Certified Medical Consultants Inc. (ECF No. 18), filed on June 12, 2017; (3)  Defendant

19  State Farm's Motion for Protective Order as to Plaintiff's Rule 30(b)(6) Deposition Subpoena to State

20  Farm (ECF No. 19), filed on June 12, 2017; (4)  Plaintiff's Countermotion to Compel Production of

21  Documents (ECF No. 27), filed on June 28, 2017; and (5) Defendant State Farm's Motion for Protective

22  Order as to Plaintiff's Second Rule 30(b)(6) Deposition Subpoena to Certified Medical Consultants Inc.

23  (ECF No. 21), filed on June 22, 2017.  The Court conducted a hearing on these motions on July 10,

24  2017.

25                                      **BACKGROUND**

26          Plaintiff Lorene McCall filed her complaint against Defendant State Farm Mutual Automobile

27  Insurance Company in the District Court, Clark County, Nevada on January 5, 2016.  *Petition for*

28  *Removal* (ECF No. 1), *Exhibit A, Complaint* (hereinafter *Complaint*).  Defendant filed its answer in the

state court action on March 1, 2016. *Id.* at *Exhibit C.* Defendant thereupon removed the action to this court on May 11, 2016. *Petition for Removal* (ECF No. 1).

Plaintiff alleges that she was injured in a July 22, 2013 motor vehicle accident that was caused by the fault of the other driver. She subsequently settled with the other driver for the $10,000 limits of his liability insurance policy.[1] *Complaint*, at ¶¶ 6-8. On November 20, 2014, Plaintiff made a demand for payment of the $25,000.00 underinsured motorist coverage limits under the insurance policy issued to her by Defendant State Farm. State Farm evaluated Plaintiff's claim and determined that there was no underinsured motorist exposure arising from the July 22, 2013 accident. *Id.* at ¶¶ 11-12. Plaintiff alleges causes of action against Defendant for breach of contract, breach of the covenant of good faith and fair dealing (bad faith), and unfair claims practices in violation of Nevada Revised Statute ("NRS") 686A.310. Plaintiff states that State Farm has since paid the $25,000 underinsured motorist coverage limits. She is therefore proceeding on her causes of action for common law bad faith and violations of NRS 686A.310.

Plaintiff attached as an exhibit to her oppositions a copy of her attorney's November 20, 2014 demand letter to State Farm which listed $33,225.00 in past medical expenses and $21,000.00 for future medical expenses. *Opposition* (ECF No. 26), *Exhibit 1.* She also attached the April 24, 2015 letter from State Farm's claim representative which stated:

> [W]e have received the utilization report of Sanghamitra Basu, MD who reviewed this matter at the request of State Farm, and have enclosed a copy of his report for your review.
>
> Based on our evaluation of the available information, along with the report of Dr. Basu, it appears that the tort-feasor's liability limits will sufficiently reimburse your client for her bodily injuries. As such, we do not believe that any UIM value exists for this loss.

*Opposition* (ECF No. 26), *Exhibit 2.*

Plaintiff alleges that State Farm relied on Dr. Basu's report to deny her underinsured motorist claim. Neither party has provided the Court with a copy of Dr. Basu's report. Nor have they provided

---

[1]Plaintiff's November 20, 2014 letter to State Farm stated that the limits of the tortfeasor's liability policy was "15/30," i.e $15,000 per person, $30,000 per accident. For purposes of this order, the Court assumes that the complaint is accurate.

any summary of her medical opinions.  State Farm obtained Dr. Basu's services through Certified

Medical Consultants which provides physicians in various medical fields to review claimants' medical

records and provide opinions on relevant medical issues in a claim.  It is the Court's understanding that

State Farm pays a fee to Certified Medical Consultants for obtaining the medical expert's opinion and

that Certified Medical Consultants, in turn, pays the physician for his or her services.  The fees or rates

charged for these services are presumably set forth in the parties' contracts.

The Court entered a scheduling order on August 2, 2016 which set a discovery cut-off date of

January 24, 2017, and initial and rebuttal expert witness disclosure deadlines of November 28 and

December 28, 2016, respectively.  *Order* (ECF No. 10).  On December 16, 2016, the Court granted the

parties' first stipulation to extend discovery by 90 days.  The new discovery cut-off date was April 24,

2017.  *Order* (ECF No. 13).  On March 31, 2017, the Court granted the parties' second stipulation to

extend discovery by 90 days which set a discovery deadline of June 23, 2017.  *Order* (ECF No. 15).  The

parties' second stipulation stated that they disclosed their expert witnesses on November 28, 2016.  *Id.* at

pg. 2.  State Farm deposed Plaintiff's "bad faith" expert, Frederick Berry, Jr., on May 23, 2017.  *See*

*Opposition* (ECF No. 27), *Exhibit 17.*

Plaintiff served requests for production of documents on State Farm on February 24, 2017.

*Opposition* (ECF No. 26), *Exhibit 4.*  Plaintiff's requests for production include the following:

**Request No. 4:**  all correspondence, e-mail correspondence, reports, opinions or other writings provided to or obtained from any expert witness or specialist in this case;

**Request No. 5:**  all documents relied on by an expert witness or specialist in this case in forming his/her opinion, including correspondence, e-mail correspondence, reports, medical records, treatises, articles, photographs or writings;

**Request No. 10:**  all files related to Defendant's handling of the Plaintiff's claim;

**Request No. 12:**  all documents, writings, and communications that are used by State Farm personnel for reference, training and guidelines for the handling of underinsured motorist claims.  These items should include, but not be limited to, all claims manuals, all written (sic) computerized guidelines, all information provided to Defendant's claims personnel regarding the adjudication of claims and all other resources used by Defendant's personnel for the adjudication of claims;

**Request No. 14:**  any and all written contracts or agreements, by whatever name, between State Farm and Certified Medical Consultants;

**Request No. 15:**  any and all documents, in whatever form, related to the approval of Certified Medical Consultants as a vendor;

**Request No. 16:**  any and all 1099s issued by State Farm to Certified Medical Consultants in the past five years;

**Request No. 17:**  any and all 1099s issued by State Farm to Dr. Sanghamitra Basu in the past five years;

**Request No. 18:**  any and all documents, including but not limited to records review reports sent to or received from Certified Medical Consultants and/or Dr. Sanghamitra Basu in connection with the utilization review on Plaintiff's claim;

**Request No. 19:**  any and all requests for utilization reports in connection with an uninsured/underinsured motorist claim, sent from State Farm to Certified Medical Consultants in the past five years;

**Request No. 20:**  any and all utilization reports authored by Dr. Sanghamitra Basu on behalf of State Farm, in connection with an uninsured/underinsured motorist claim, in the past five years;

**Request No. 21:**  any and all correspondence, in whatever form, between State Farm and Certified Medical Consultants regarding the present claim;

**Request No. 22:**  any and all correspondence, in whatever form, between State Farm and Dr. Sanghamitra Basu regarding the present claim.

*Opposition* (ECF No. 26), *Exhibit 4.*

State Farm served its responses to Plaintiff's requests for production on April 18, 2017, and its supplemental responses on April 26, 2017.  *Motion* (ECF No. 17), *Exhibits C* and *D*; *Opposition* (ECF No. 26), *Exhibits 5* and *6.*  Defendant attached to its supplemental responses a proposed stipulated confidentiality order.  *Id.*  In response to Request No. 1, State Farm stated that it had produced its complete claim file regarding Plaintiff's underinsured motorist claim except for portions protected by the attorney-client privilege or work product doctrine.  In response to Request No. 4, State Farm stated that its experts' written reports identified the documents considered in forming their opinions which had already been produced to Plaintiff, and that State Farm would supplement its response if the experts had any additional responsive documents that are discoverable and not protected from disclosure under Rule 26.  In response to Request Nos. 10, 18, 21 and 22, State Farm referred to its response to Request No. 1 regarding its production of the claims file.  State Farm objected to Request No. 12 on the grounds that its claims manuals contain confidential, proprietary business information and trade secrets.  State Farm stated that it would produce relevant portions of the manuals that do not contain privileged information, and would produce other relevant claims manual documents upon entry of a protective order.  State Farm objected to Requests Nos. 14, 15, 16, 17, 19 and 20 on the grounds that they are irrelevant and

1  seek confidential, proprietary business information and trade secrets.  State Farm also objected to

2  Request Nos. 19 and 20 as unduly burdensome.  *Motion* (ECF No. 17), *Exhibit C*.  In its supplemental

3  responses served on April 26, 2017, State Farm produced some claims manual documents.  It also served

4  a privilege log and a proposed stipulated protective order.  *Motion* (ECF No. 17)*, Exhibit D*, at page 10,

5  supplemental response to Request No. 12.

6      On May 23, 2017, Plaintiff served a notice to take the Rule 30(b)(6) deposition of Certified

7  Medical Consultants on June 20, 2017—three days before the discovery cut-off.  *Motion* (ECF No. 17),

8  *Exhibit A.*  The notice listed the following topics: (1) the corporate structure of Certified Medical

9  Consultants; (2) all written contracts between Certified Medical Consultants and State Farm; (3) all

10  communications between Certified Medical Consultants and State Farm related to approval of Certified

11  Medical Consultants as a vendor; (4) all 1099s issued to Certified Medical Consultants by State Farm in

12  the past 5 years; (5) all documents Certified Medical Consultants sent to or received from State Farm in

13  connection with the utilization review of Plaintiff's UIM claim; (6) all requests for utilization reports in

14  connection with an uninsured/underinsured motorist claim that Certified Medical Consultants received

15  from State Farm in the past 5 years; (7) the doctors assigned to perform utilization reports requested by

16  State Farm; and (8) all correspondence between State Farm and Certified Medical Consultants regarding

17  Plaintiff.   The subpoena only required Certified Medical Consultants to provide testimony on the listed

18  topics.  It did not include a requirement to produce documents at the deposition.  *Joinder* (ECF No. 25),

19  *Exhibit A.*  On June 12, 2017, State Farm filed its emergency motions to quash the subpoena and for

20  protective order against the taking of the deposition of Certified Medical Consultants.  *Motions* (ECF

21  Nos. 17, 18).

22      On June 14, 2017, Certified Medical Consultants' attorney conducted a conference with

23  Plaintiff's attorney in which he proposed that in lieu of taking a live deposition, Certified Medical

24  Consultants would produce to Plaintiff (1) the 1099s issued to Certified Medical Consultants by State

25  Farm for the past five years, (2) Certified Medical Consultants' records showing the documents it sent to

26  Dr. Basu that were reviewed by her in connection with her reports, and (3) the reports that Dr. Basu

27  authored in the last 5 years when she has been retained by State Farm through Certified Medical

28  Consultants.  *Joinder* (ECF No. 25), (declaration of counsel, pg. 3), and *Exhibit B*, (June 15, 2017 letter

from Certified Medical Consultants' attorney to Plaintiff's counsel).  Certified Medical Consultants' counsel represents that he waited for a response from Plaintiff to his proposed compromise.  Instead of responding to the proposal, Plaintiff served an amended notice of deposition and subpoena on June 19, 2017 which required the deponent to produce documents at the deposition which was rescheduled for June 23, 2017.  *Joinder* (ECF No. 25), *Exhibits D* and *E.*  This prompted State Farm to file another motion for protective order on June 22, 2017 to prohibit the Rule 30(b)(6) deposition of Certified Medical Consultants.

On May 23, 2017, Plaintiff also served a notice of Rule 30(b)(6) deposition of Defendant State Farm to be taken on June 21, 2017.  *Opposition* (ECF No. 27), *Exhibit 8* (deposition notice).  The deposition notice listed 30 topics of inquiry.  It did not require State Farm to produce any documents at the deposition.  *Id.*  On June 5, 2017, Plaintiff's and Defendant's counsel engaged in a meet and confer conference regarding the deposition topics.  *Opposition* (ECF No. 27), *Exhibit 10*.  State Farm agreed to produce a deponent(s) to testify on topic Nos. 3, 4, 6, 7, 9, 19, 21, 24, 25 and 29.  It agreed to produce a deponent to testify to part of topic No. 10, and agreed to produce a deponent(s) to testify on topic Nos. 1, 2, 11, 12, 14 and 28 subject to the limitations set forth in counsel's letter.  *Id.*  The parties were unable to reach an agreement on the other deposition topics.

State Farm seeks an order prohibiting Plaintiff from deposing it on the following topics:

5. State Farm's policies and procedures regarding audits, file reviews, or any other review, as well as any such audits/reviews of this file from the date of the subject UIM claim of Lorene McCall to the present;

8. The names, addresses, and employment records of each person who participated in the handling of the subject UIM claim in any way;

13. Any and all training, manuals and other documents given to State Farm agents or employees who were in any way involved in the handling of the subject claim by State Farm;

15. All computer and imaging systems used to process the subject claim, including, but not limited to the AWD, PROFS, Colossus and Lotus programs or systems, and the information concerning the subject claim contained in these systems;

16. Any and all written contracts or agreements, by whatever name, between State Farm and Certified Medical Consultants;

17. Any and all documents, in whatever form, related to the approval of Certified Medical Consultants as a vendor;

6

18.    The process for approving a vendor;

20.    Any and all 1099s issued by State Farm to Dr. Sanghamitra Basu in the past five years;

22.    Any and all requests for utilization reports in connection with an uninsured/underinsured motorist claim sent from State Farm to Certified Medical Consultants in the past five years.

23.    Any and all utilization reports authored by Dr. Sanghamitra Basu on behalf of State Farm, in connection with an uninsured/underinsured motorist claim, in the past five years.

26.    The net profits State Farm earned each calendar or fiscal year from 2013 to the present.

27.    The corporate name, trade name, place and date of incorporation of State Farm. The business structure of State Farm, including location of administrative offices, location of financial records, places where doing business, home office location, branches, subsidiaries, how stock is held, and general history of State Farm.

30.    State Farm's advertisement and marketing of UIM policies from March 20, 1999 to March 20, 2000.

*Motion for Protective Order* (ECF no. 19), at pg. 26; *Opposition* (ECF No. 27), *Exhibit 10.*

Plaintiff has agreed to withdraw topic Nos. 27 and 30.

## DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure, as amended in 2015, provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, and whether the burden and expense of the proposed discovery outweighs its likely benefit.  Information within the scope of discovery need not be admissible in evidence to be discoverable."

The intent of the 2015 amendments to Rule 26(b) was to encourage trial courts to exercise their broad discretion to limit and tailor discovery to avoid abuse and overuse, and to actively manage discovery to accomplish the goal of Rule 1 "'to secure the just, speedy, and inexpensive determination of every action and proceeding.'"  *Roberts v. Clark County School District*, 312 F.R.D. 594, 601–04 (D. Nev. 2016).  The court, quoting Chief Justice Roberts' 2015 Year-End Report, states:

. . .

7

1

2

3

4

5

> The 2015 amendments to Rule 26(b)(1) emphasize the need to impose "reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." The fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their discovery requests to the requisites of a case." The pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary and wasteful discovery. This requires active involvement of federal judges to make decisions regarding the scope of discovery.

6    *Roberts*, 312 F.R.D. at 603. *See also Nationstar Mortgage v. Flamingo Trails No. 7*, 316 F.R.D.

7    327, 331 (D.Nev. 2016).

8        The party opposing discovery has the burden of showing that it is irrelevant, overly broad, or

9    unduly burdensome. *Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-4 (S.D.Ind. 2000); *Fosbre*

10   *v. Las Vegas Sands Corp.*, 2016 WL 54202, at *4 (D.Nev. Jan. 5, 2016); *Izzo v. Wal-Mart Stores, Inc.*,

11   2016 WL 593532, at *2 (D.Nev. Feb. 11, 2016). When a request is overly broad on its face or when

12   relevancy is not readily apparent, however, the party seeking discovery has the burden to show the

13   relevancy of the request. *Desert Valley Painting & Drywall, Inv. v. United States*, 2012 WL 4792913, at

14   *2 (D.Nev. Oct. 9, 2012) (citing *Marook v. State Farm Mut. Auto. Ins. Co.* 259 F.R.D. 388, 394-95

15   (N.D. Iowa 2009)). The 2015 amendments to Rule 26(b) have not changed these basic rules, although

16   they must now be applied with a greater emphasis on proportionality. As the court in *In re Bard IVC*

17   *Filters Products*, 317 F.R.D. 562, 563 (D.Ariz. 2016) states:

18

19

20

21

22

23

> Relevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case. The Advisory Committee Note makes clear, however, that the amendment does not place the burden of proving proportionality on the party seeking discovery. The amendment "does not change the existing responsibilities of the court and the parties to consider proportionality, and the change does not place on the party seeking discovery the burden of addressing all proportionality considerations." Rule 26, Advis. Comm. Notes for 2015 Amends. Rather, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."

24       Defendant asserts as an overall objection to Plaintiff's Rule 30(b)(6) deposition notices that it

25   had already objected or responded to Plaintiff's requests for production of documents relating to the

26   same topics listed in the deposition notices. Defendant argues that "[r]ather than continuing the ongoing

27   meet-and-confer process that was underway and had already resulted in State Farm producing additional

28   documents, Plaintiff elected to short-circuit this mandatory process by turning to a non-party to compel

1   the very same information and documents that State Farm has objected to as irrelevant, confidential

2   (some, not all), and disproportional to the needs of the case." *Motions* (ECF Nos. 17, 19), at pg. 6.

3       If a party has served discovery requests on the opposing party to which the latter has objected,

4   then the requesting party should (1) attempt to resolve the discovery dispute through the meet and confer

5   process required by Rule 37(a)(1) and Local Rule 26-7(c), and if that is unsuccessful, (2) timely file a

6   motion to compel production of the requested documents or information. In general, it is not proper to

7   avoid the opposing party's objections by requesting the same documents or information through another

8   discovery device. It would be improper, for example, to serve duplicate requests for production of

9   documents to which the opposing party has already objected, thereby forcing the party to once again

10   object. Likewise, it is not proper to serve a subpoena duces tecum on the opposing party to produce

11   documents that it has already objected to producing in its response to requests for production. Although

12   most courts hold that a subpoena duces tecum may be served on another party, it cannot be used to

13   circumvent Rule 34 or the other discovery rules. *United States v. 2121 Celeste Road SW*, 307 F.R.D.

14   572, 588 (D.N.M. 2015). *See also Mortgage Information Services, Inc. v. Kitchens*, 210 F.R.D. 562, 565

15   (W.D.N.C. 2002). The court also has an obligation to protect non-parties from being burdened with

16   subpoenas for documents that can more easily and inexpensively be obtained from the opposing party.

17   *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005); *Dart Industries Co. v. Westwood*

18   *Chemical Co.*, 649 F.2d 646, 649 (9th Cir. 1980). Although a court may restrict discovery from non-

19   parties on this basis, it is not required to do so. *Compass North Industries LLC v. Taylor*, 2014 WL

20   2779175, at *2 (D.Ariz. June 19, 2014).

21       Defendant objects to the Rule 30(b)(6) deposition notices because the depositions were

22   scheduled to be taken at the end of the discovery period. Defendant also argues that Plaintiff waited

23   until late in discovery to serve her written discovery requests. Plaintiff argues, however, the depositions

24   were properly noticed to be taken before the expiration of the discovery period, and that her requests for

25   production of documents were also served sufficiently before the expiration of discovery. There is

26   nothing *per se* improper in noticing a deposition to be taken at the end of the discovery period. Nor is it

27   improper to serve written discovery requests near the end of discovery so long as the due date for serving

28   responses is not after the discovery cutoff date. *Bishop v. Potter*, 2010 WL 2775332, at *1 (D. Nev. July

1    14, 2010); *Bonavitto v. Nevada Property 1 LLC*, 2014 WL 5364077, at *4 (D. Nev. Oct. 21, 2014). A

2    problem arises, however, when a party attempts to use such late discovery as grounds for conducting

3    additional discovery which requires the discovery period to be extended or reopened.[1]

4    　　Plaintiff served the notice of deposition of Certified Medical Consultants on May 23, 2017. The

5    original subpoena did not require Certified Medical Consultants to produce any documents. Following

6    the meet and confer conference on June 14, 2017, however, Plaintiff served an amended notice of

7    deposition on June 19, 2017 which rescheduled the deposition to June 23, 2017. On June 19th, Plaintiff

8    also served a subpoena duces tecum on Certified Medical Consultants which required it to produce 9

9    categories of documents at the deposition. Under Rule 30(b)(1), the noticing party must give reasonable

10    notice of a deposition to other parties. Where the reasonableness of the notice is disputed, the court must

11    determine what is reasonable based on the circumstances of the particular case. *Fernandez v. Penske*

12    *Truck Leasing Co.*, 2013 WL 438669, at *1 (D.Nev. Feb. 1, 2013) (citing *Paul v. Winco Holdings, Inc.*,

13    249 F.R.D. 643, 656 (D. Idaho 2008)). Rule 45 also does not specify what constitutes a reasonable time

14    to allow for compliance with a subpoena. *Ott v. City of Milwaukee*, 274 F.R.D. 238, 242 (E.D. Wis.

15    2011). The subpoenaed person should be given reasonable time to comply, and if such is not granted,

16    may file a motion to quash or modify the subpoena. *Id.*

17    　　Plaintiff gave State Farm and Certified Medical Consultants reasonable notice of the taking of

18    the Rule 30(b)(6) depositions in the original notices and subpoena. Plaintiff's subsequent service of a

19    subpoena duces tecum on Certified Medical Consultants on June 19th was unreasonable. As discussed

20    hereinafter, however, the Court will only require Certified Medical Consultants to produce documents

21    that it offered to produce in lieu of the deposition on June 14, 2017. The Court otherwise rejects

22    Defendant's argument that it was improper to schedule Rule 30(b)(6) depositions at the end of the

23    discovery period.

24    . . .

25

26    　　　[1]Plaintiff disclosed her bad faith expert at the end of November 2016. Plaintiff states that she intends to
27    have her bad faith expert review the documents or testimony obtained through the Rule 30(b)(6) depositions, or
through her countermotion to compel responses to her document requests, so that the expert can supplement his
28    opinions. Whether such supplementation should be allowed is not presently before the Court.

1    **1.    Documents and Testimony Relating to Dr. Basu and Certified Medical**
2    **Consultants.**

3      An insurer has the right to have a qualified physician review the insured's medical records and

4    provide opinions on causation or the reasonableness of the medical treatment and expenses.  Reliance on

5    an expert's opinion, however, does not automatically insulate an insurer from bad faith liability.  An

6    insurer can be found liable for bad faith (1) if it does not honestly select experts to make appropriate

7    evaluations, (2) if it relies on expert reports that are not reasonable, or (3) if it fails to conduct a thorough

8    investigation.  *Chateau Chamberay Homeowners Ass'n v. Assoc. Int'l Ins. Co.*, 90 Cal.App.4th 335, 348,

9    108 Cal.Rptr.2d 776, 785 (Cal.App. 2001).  *See also Hangarter v. Provident Life and Acc. Ins. Co.*, 373

10   F.3d 998, 1010 (9th Cir. 2004).  "When an insurer is subjectively aware that it has hired a biased expert,

11   it is simply not objectively reasonable to rely on that expert."  *Bosetti v. United States Life Ins. Co. of*

12   *N.Y.*, 175 Cal.App.4th 1208, 96 Cal.Rptr.3d 744 (Cal.App. 2009).

13      Defendant argues that Plaintiff has made no effort to show that Dr. Basu's opinions regarding her

14   alleged injuries or medical treatment were, in fact, objectively unreasonable.  The information provided

15   to the Court is that (1) State Farm relied on Dr. Basu's report in asserting that Plaintiff was fully

16   compensated by the payment of the tortfeasor's liability insurance limits; (2) Plaintiff's past and future

17   medical expenses allegedly resulting from the accident exceeded the combined limits of the liability and

18   underinsured motorist coverages; and (3) State Farm paid the $25,000.00 underinsured motorist limits to

19   Plaintiff sometime after this lawsuit was filed.  Dr. Basu's report has not been provided to the Court.

20   Nor has it been provided with any information as to how Dr. Basu's medical opinions differ from or

21   conflict with those of Plaintiff's physicians.  While facts demonstrating the unreasonableness of the

22   reviewing physician's opinions do not necessarily have to be alleged in the complaint, Plaintiff has an

23   obligation to make some threshold showing that the reviewing physician's opinions were objectively

24   unreasonable to support broad-based discovery into the insurer's use of such physicians to conduct

25   medical records reviews.

26      Information relating to the payments that Dr. Basu has received for providing medical opinions

27   on behalf of State Farm, regardless of whether she was retained directly by State Farm or through

28   Certified Medical Consultants, is clearly relevant to her potential bias.  As the court stated in *Behler v.*

*Hanlon*, 199 F.R.D. 553, 557 (D. Md. 2001), "the fact that an expert witness may have a 20 year history

of earning significant income testifying primarily as an expert for defendants, and an ongoing economic

relationship with certain insurance companies, certainly fits within recognized examples of

bias/prejudice impeachment, making such facts relevant both to the subject matter of the litigation, and

the claims or defenses raised, and placing it squarely within the scope of discovery authorized by Rule

26(b)(1) . . . ." *Behler* and other courts have limited the durational scope of such discovery to a period of

five years. *Id.* at 562; *Silgan Containers v. National Union Fire Ins. Co.*, 2011 WL 1058861, at *6

(N.D.Cal. March 23, 2011); *Cadle v. GEICO General Ins. Co.*, 2014 WL 12639859, at *6 (M.D.Fla.

Aug. 29, 2014).

       In this case, Plaintiff requested that State Farm produce any and all 1099s issued by State Farm to

Dr. Basu in the past five years. *Motion* (ECF No. 17), *Exhibit C*, Request No. 17.  Certified Medical

Consultants states that it may be in a better position than State Farm to locate and produce the 1099s

issued to Dr. Basu for medical review services performed on behalf of State Farm.  The request for such

payment records is reasonable and the Court will therefore order that any and all 1099s issued to Dr.

Basu for medical expert review services performed on behalf of State Farm in the past five years be

produced to Plaintiff.  Certified Medical Consultants also offered to produce the 1099s issued to it by

State Farm during the past five years.  The payments that Certified Medical Consultants has received

from State Farm during the past five years are relevant to show its potential bias or motive to retain

physicians who will render opinions favorable to the insurer.  The Court therefore orders that these

1099s also be produced.

       Plaintiff also requested that State Farm produce all utilization reports authored by Dr. Basu on

behalf of State Farm in connection with an uninsured/underinsured motorist claim, in the past five years.

*Motion* (ECF No. 17), *Exhibit C*, Request No. 23.  She also requests that State Farm produce "[a]ny and

all requests for utilization reports in connection with an uninsured motorist claim sent from State Farm

to Certified Medical Consultants in the past five years." *Id.* at Request No.22.  In *Abueg v. State Farm

Mut. Auto. Ins. Co.*, 2014 WL 5503114, at *5-6 (D.Nev. Oct. 30, 2014), the court ordered State Farm to

produce medical reports regarding other claimants/insureds prepared by the physician who examined the

plaintiff.  The court, however, denied plaintiff's requests for reports prepared by other physicians. *Id.* at

*5-6. The Court will follow the same approach in this case. Dr. Basu's reports on behalf of State Farm in other cases are relevant because they may show whether she uniformly or consistently provides opinions favorable to State Farm and adverse to the insured-claimant. On other hand, Dr. Basu's reports may show that she makes objectively reasonable medical assessments based on the specific facts of each case. Requests for utilization reports made by State Farm to Certified Medical Consultants in other uninsured/underinsured motorist claims, however, are too collateral and lacking in probative value to justify their production in this case.

Plaintiff is therefore entitled to production of (1) all documents that were provided to Dr. Basu by State Farm or Certified Medical Consultants relating to her review of Plaintiff's injuries and medical treatment and expenses; (2) all non-privileged communications between State Farm, Certified Medical Consultants and/or Dr. Basu relating to the medical review of Plaintiff's injuries and medical treatment and expenses; (3) 1099s issued to Dr. Basu by Certified Medical Consultants for services performed on behalf of State Farm in the past five years; (4) copies of other medical records review reports prepared by Dr. Basu on behalf of State Farm in connection with an uninsured/underinsured motorist claims during the past five years. The identities of the insured-claimants, and personal identification information such as social security numbers and dates of birth should be redacted from the reports; and (5) the 1099s that Certified Medical Consultants received from State Farm during the past five years.

The contract between State Farm and Certified Medical Consultants pursuant to which the medical opinion of Dr. Basu was obtained is also relevant and should be produced. Contrary to Defendant's assertion, the court did not prohibit discovery of such agreements in *Abueg v. State Farm*. The order in that case stated that "[d]uring the August 15, 2014 hearing, the Court ordered IME, Inc. to provide certain information to Plaintiff regarding its contractual relationship with State Farm." 2014 WL 5503114, at *4. If State Farm or Certified Medical Consultants assert that the contract contains trade secrets or proprietary information, then they may apply for a protective order to redact those provisions, or to preclude the dissemination of the contract to third persons.

Plaintiff's other discovery requests pertaining to Certified Medical Consultants or its relationship with State Farm are not reasonably proportional to the needs of the case. If legitimate issues exist regarding the qualifications of a vendor or quality of the services it has provided, then discovery

regarding those matters is appropriate.  The mere fact that an insurer contracts with a vendor to provide physicians to perform medical records reviews, however, does not subject all aspects of the insurer/vendor relationship to discovery.  Plaintiff has not alleged that Dr. Basu was incompetent or unqualified to perform the medical records review in this case.  Nor has she shown that Dr. Basu had a known "track record" of providing biased medical opinions.[2]  Nor has Plaintiff produced any evidence that Certified Medical Consultants has a record of retaining incompetent, unqualified or biased physicians.  It may, of course, be difficult for a plaintiff to independently develop such evidence.  If the requirement for proportionality in discovery means anything, however, it must mean that burdensome, tangential discovery should not be permitted based on the mere possibility that something may turn up to support what is otherwise only speculation.

Defendant State Farm and Certified Medical Consultants are not required to produce documents or provide testimony regarding other written contracts or agreements between them; documents relating to the approval of Certified Medical Consultants as a vendor; or requests for utilization reports in connection with other uninsured/underinsured motorist claims.  Nor is Certified Medical Consultants required to produce a witnesses to testify about its corporate structure.  Plaintiff may, however, depose Certified Medical Consultants and/or State Farm regarding the reasons for selecting Dr. Basu to perform the medical records review of Plaintiff's claim.  A deposition limited to this topic should not take a substantial amount of time, and can probably be completed within one hour.

**2. Employee Records.**

Topic 8 of Plaintiff's Rule 30(b)(6) deposition notice to State Farm requires it to provide testimony regarding "the names, addresses, and employment records of each person who participated in the handling of the subject UIM claim in any way."  During the meet and confer process, Plaintiff agreed to narrow Topic No. 8 as follows: "for the individuals assigned to adjust claims, she was seeking documentation of their qualifications, training in handling of UIM claims in Nevada, and disciplinary action taken with respect to handling of claims."  *Opposition* (ECF No. 27), pgs 4-5.

---

[2]Defendant makes much of the fact that one of Plaintiff's treating physicians gave her a referral to see Dr. Basu.  The referring physician did not know Dr. Basu or specifically vouch for her qualifications or impartiality. The Court therefore gives no evidentiary weight to this referral.

Information regarding the job qualifications and training of the claims employees who actually handled the plaintiff's insurance claim is relevant and generally discoverable in a bad faith action. Disciplinary action against the claims employee with respect to claims handling is also relevant. *Wood Expressions Fine Custom Cabinetry, Inc. v. Cincinnati Ins. Co.*, 2013 WL 12190508, at *5-6 (D.Ariz. Nov. 27, 2013) (citing *Miel v. State Farm Auto Ins. Co.*, 912 P.2d 1333, 1337 (Ariz.Ct.App. 1995)). *Whitney v Esurance Ins. Co.*, 2013 WL 12092069, at *2 (S.D.Fla. Oct. 18, 2013), states that information regarding the training, supervision and control of the employees who handled plaintiff's claim, the competence of those employees, the insurer's knowledge of the employees' professional abilities and shortcomings, and the standards used to evaluate their performance are all relevant and discoverable in a bad faith action. When a request is made for production of employee personnel records, however, the court must ensure that irrelevant, private or confidential information contained in the personnel file is not disclosed. *Fullbright v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 300436, at *2 (W.D. Okla. Jan. 20, 2010) (citing *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648 (10th Cir. 2008)). *See also Blotzer v. L-3 Communications Corp.*, 287 F.R.D. 507, 509 (D.Ariz. 2012). Court have therefore limited such discovery to information reflecting the background, qualifications and job performance of the claims adjusters who were directly involved in handling the plaintiff's claim and have required that such information be produced subject to a protective order. *Fullbright*, at *4-5; *Williams v. Allstate Fire and Cas. Ins. Co.*, 2015 WL 1602054, at *1-2 (W.D. Okla. April 9, 2015).

Plaintiff did not request the production of employee personnel files or disciplinary records in her requests for production of documents and State Farm is not required to produce such records. Plaintiff is, however, entitled to obtain testimony from State Farm at the Rule 30(b)(6) deposition regarding the training and discipline—with respect to the claims handling— of the employees who handled her underinsured motorist claim. Information regarding disciplinary action against individual claims adjusters, however, should be protected from disclosure to non-parties. The Court will therefore require that deposition testimony regarding such information be subject to a protective order that it not be disclosed to non-parties or the public.

. . .

. . .

### 3.    Claims Manuals/ Protective Order

Plaintiff's Request for Production No. 12 requested "all documents, writings, and communications that are used by State Farm personnel for reference, training and guidelines for the handling of underinsured motorist claims."  Defendant states that it has already produced non-privileged training or claims manual documents.  It asserts that some of its training or claims manual documents are trade secrets or confidential, propriety information.  Defendant is willing to produce those documents so long as they are subject to a protective order which limits their use to this case and prevents their disclosure to third persons.  Deposition topic 13 requires State Farm to provide testimony about "[a]ny and all training, manuals and other documents given to State Farm agents or employees who were in any way involved in the handling of the subject claim by State Farm."  Plaintiff has agreed to narrow topic 13 to the training of employees regarding the handling of uninsured/underinsured motorist claims in Nevada. *Opposition* (ECF No. 27), pg. 5.

State Farm submitted a proposed "Stipulated Confidentiality and Protective Order" (hereinafter "protective order") to Plaintiff with its supplemental responses to requests for production served on April 27, 2017. *See Motion* (ECF No. 17)*, Exhibit D*.  Plaintiff did not execute the protective order.  Nor did she advise Defendant of any specific objections that she had to the proposed protective order.  In her opposition, Plaintiff objects to paragraph 11 of the proposed protective order which states:

> Any party objecting to the designation of any information as Confidential Information shall clearly state the basis for the objection in a letter to counsel for the party making the designation, and such letter must be received by counsel for the party making the designation no later than sixty (60) days after the objecting party received the Confidential Information to which it objects.  If the parties are unable to resolve the objection, the objecting party may move the Court to do so.  Until an objection to the designation of information has been resolved by agreement of counsel or by order of the Court, the information shall be assumed to be properly designated, and shall be subject to the terms of this Protective Order.

*Opposition* (ECF No. 27), pg. 19.

Rule 26(c) permits the court to enter a protective order when the party seeking protection establishes good cause and justice requires the entry of the order to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense.  The burden of persuasion is on the party seeking the protective order. *U.S. E.E.O.C. v. Caesars Entertainment*, 237 F.R.D. 428, 432

16

1   (D.Nev. 2006) (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986)).  A party

2   seeking a protective order for its alleged trade secrets must show (1) the existence of a trade secret or

3   other confidential research, development, or commercial information, and (2) that its disclosure would

4   be harmful to the party's interests in the property.  *Takata v. Hartford Comprehensive Employee Ben.*,

5   283 F.R.D. 617, 621 (E.D.Wash. 2012).  Once the moving party meets its burden, the other party must

6   show that the information is relevant and necessary to prepare the case for trial.  *Id.* (citing *In re

7   Remington Arms Co.*, 952 F.2d 1029, 1032 (8th Cir. 1991)).  If the court decides that the information

8   should be disclosed to the other party, it should still enter an appropriate protective order to safeguard

9   the rights of the parties, and which, among other things, may limit use of the disclosed information to the

10  subject lawsuit and prevent its disclosure to third persons.  *Id.*

11        Courts have held that insurance company claims manuals can qualify as "trade secrets" or

12  "confidential, propriety information" entitled to protection from public disclosure.  *Haldiman v.

13  Continental Cas. Co.*, 2014 WL 584305, at *3 (D.Ariz. Feb. 13, 2014) (citing *Hamilton v. State Farm

14  Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001)); *Pochat v. State Farm Mut. Auto Ins. Co.*,

15  2008 WL 5192427, at *7-10 (D.S.D. Dec. 11, 2008); *Republic Services, Inc. v. Liberty Mut. Ins.

16  Companies*, 2006 WL 1635655, at *6 (E.D.Ky. June 9, 2006)).  This view is not uniformly accepted,

17  however.  *See Guessford v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 2013 WL 2242988, at *9, n. 13

18  (M.D.N.C. May 21, 2013) and *Woo v. Fireman's Fund Ins. Co.*, 154 P.3d 236, 240 (Wash.Ct.App.

19  2007).

20        State Farm has not yet demonstrated that its training materials or claims manuals are entitled to

21  protection as trade secrets or confidential, proprietary information.  Defendant has not forfeited its right,

22  however, to seek a protective order.  Federal district courts often approve "blanket" stipulated protective

23  orders which allow parties to designate information as trade secrets or confidential information so that it

24  can be provided to the opposing party, subject to the condition that it be used only in the subject

25  litigation and not disclosed publicly or to unauthorized third persons.  Such blanket protective orders

26  also provide that the recipient may object to the confidentiality designation, in which case the

27  designating party had the burden of proving that the information or document is entitled to protection.

28  Because blanket stipulated protective orders are entered without the parties showing, or the court

1    finding, that any particular document is entitled to protection, they are inherently subject to challenge

2    and modification. *San Jose Mercury News v. U.S. Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999) and

3    *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

4         The benefit of a blanket stipulated protective order to the party seeking allegedly confidential

5    information is that she is able to inspect the information or document before a judicial determination is

6    made as to whether it is entitled to protection. This affords greater ability to challenge unreasonable

7    confidentiality designations.  If the receiving party objects to the confidentiality designation, then the

8    party seeking the protective order must still establish good cause for its issuance.  Absent a stipulated

9    protective order, however, the only information that party requesting the information or documents is

10   likely to receive is a privilege log or affidavit that describes the nature of the information or document,

11   but does not disclose its content.

12         State Farm followed the common practice of submitting a proposed stipulated protective order to

13   Plaintiff, and stating that it would produce additional documents once the stipulated protective order was

14   entered by the Court.  Plaintiff's counsel neither returned the executed proposed protective order, nor

15   informed Defendant that she rejected it in whole or in part.  Plaintiff now objects to the proposed

16   protective order based on the provisions in paragraph 11.  Paragraph 11 requires the objecting party to

17   serve her written objections within 60 days after she receives information or documents that have been

18   designated confidential.  Sixty days is more than an adequate amount of time in which to register an

19   objection.  The requirement that the objection be made in writing also is reasonable in order to avoid

20   uncertainty or confusion as to whether an objection was made.  Likewise the requirement that the basis

21   for objection be clearly stated is reasonable.  A clearly stated basis for objecting could be that the

22   information or document provided does not qualify as a trade secret, or that the designating party has not

23   demonstrated that the information or document is entitled to protection.  Paragraph 11, places the burden

24   on the objecting party to the file a motion with the Court challenging the confidentiality designation.

25   While the receiving party can agree to such a provision, she should not be compelled to do so.  The

26   objecting party's only obligation should be to notify the designating party of its objection and the basis

27   therefore in writing.  Once the objection is made, the party seeking confidentiality protection has the

28   obligation to file a motion for protective order regarding the disputed information or document.  The

1  failure to timely move for a protective order should result in the information or document losing its

2  protected status under the stipulated protective order.

3       The parties are encouraged to submit a revised stipulated protective order for the Court's

4  approval.  If the parties are unable to agree on a stipulated protective order, then Defendant may

5  promptly file a motion for protective order which makes the required showing that portions of its

6  training materials or claims manuals are entitled to protection as trade secrets or confidential proprietary

7  information.  Once the issue regarding the protective order is resolved, then State Farm shall produce its

8  remaining training materials or claims manual documents.  State Farm shall also produce a witness to

9  testify on deposition topic 13 as narrowed by Plaintiff during the meet and confer process.

10      **4.    Audits and File Reviews.**

11      Deposition topic 5 seeks testimony regarding State Farm's policies and procedures regarding

12 audits, file reviews, or any other review, as well as any such audits/reviews of the subject claim file from

13 the date of Plaintiff's UIM claim to the present.  Neither party has provided a description of what is

14 meant by an audit or file review of a claim.  The Court assumes that it is a quality control process to

15 determine whether claims are being properly handled.  Assuming that an audit or file review was

16 conducted of the subject claim, it is relevant to the issue of whether the claim was handled reasonably or

17 in good faith.  Policies and procedures for conducting audit or file reviews also appear generally relevant

18 and it does not appear to impose a significant burden on Defendant to prepare a witness to testify on this

19 topic.  State Farm also asserts that policies and procedures regarding audits or file reviews are

20 confidential and propriety information that should be subject to a protective order.  The preceding

21 discussion regarding protective orders therefore also applies to this topic.

22      **5.    Computer and imaging systems used to process the subject claim.**

23      Deposition topic 15 requests testimony regarding all computer and imaging systems used to

24 process the subject claim, including, but not limited to the AWD, PROFS, Colossus and Lotus programs

25 or systems, and the information concerning the subject claim contained in these systems.  Once again,

26 the parties have not provided any information about the listed systems: AWD, PROFS, Colossus and

27 Lotus.  The Court has some familiarity with "Colossus" as a computer program that estimates claim

28 value based, in part, on the amount of medical expenses.  To the extent that State Farm's claims

1  employees used computer programs to *evaluate* Plaintiff's claim, Defendant should present a deponent

2  to testify about those programs.  Such testimony is relevant and does not appear to be unduly

3  burdensome for Defendant to provide.  If Defendant reasonably needs some clarification about the

4  programs on which Plaintiff requests testimony, the parties should further meet and confer.  To the

5  extent that State Farm claims that such programs are trade secrets or confidential, proprietary

6  information, the foregoing discussion regarding protective orders applies.

7        **6.**    **State Farm's Net Profits.**

8        Deposition topic 26 requests testimony regarding the net profits State Farm earned each calendar

9  or fiscal year from 2013 to the present.  Plaintiff's complaint seeks an award of punitive damages against

10  State Farm.  Whether the court will allow the issue of punitive damages to go to the jury remains to be

11  seen.  The financial condition of the defendant is relevant to the determination of the amount of a

12  punitive damages award.  *Ainsworth v. Combined Ins. Co. of America*, 104 Nev. 587, 763 P.2d 673, 677

13  (Nev. 1988); *Conboy v. Wynn Las Vegas, LLC*, 2013 WL 17010783, at *13 (D.Nev. April 18, 2013).

14  The majority approach does not require a plaintiff to make a *prima facie* showing of merit on its punitive

15  damages claim before she is entitled to obtain discovery of defendant's net worth or financial condition.

16  *Searcy v. Esurance Ins. Co.*, 2015 WL 9216573, at *1 (D.Nev. Dec.16, 2015); *Momot v. Mastro*, 2011

17  WL 1833349, at *3 (D.Nev. May 13, 2011); *Allstate Ins. Co. v. Nassiri*, 2011 WL 318101, at *3 (D.Nev.

18  Jan. 21, 2011).  In *Searcy*, the plaintiff's Rule 30(b)(6) deposition notice sought "various financial

19  information of Defendant and information concerning its business in Nevada in particular."  In partially

20  granting defendant's motion for protective order, the court stated:

21          While information regarding Defendant's financial condition is

22  discoverable, the Court is also mindful of Defendant's concerns in
        preparing a Rule 30(b)(6) deponent on such a broad topic. . . . The Court

23  must insure that the request for discovery is proportional to the needs of
        the case, and that the burden of the (sic) providing discovery is not

24  outweighed by its likely benefit. . . . With respect to Defendant's financial
        condition it is not clear why Plaintiff could not obtain sufficient discovery

25  through less burdensome means, including a targeted request for
        production limited to information for a few years.

26  2015 WL 9216573, at *2.

27        The Court agrees with *Searcy*.  The information that Plaintiff seeks regarding Defendant's

28  financial condition can probably be found in the annual financial reports that Defendant is required to

file with the State of Nevada. *See e.g.* Nevada Administrative Code ("NAC") § 686B.308. These reports are public information, and therefore Defendant's argument that a protective order should be entered regarding its financial condition also appears to be without merit. In lieu of deposition testimony on topic 26, the Court orders Defendant to provide Plaintiff with copies of its two most recent annual reports of financial condition filed with or at the direction of the State of Nevada. If Plaintiff believes that the information in the financial reports is insufficient to establish Defendant's net worth for purposes of her punitive damages claim, then the parties should further confer to determine whether any deposition testimony on this topic is necessary. Accordingly,

**IT IS HEREBY ORDERED** that (1) Defendant State Farm's Motion to Quash Plaintiff's Subpoena to Certified Medical Consultants Inc. (ECF No. 17); (2) Defendant State Farm's Motion for Protective Order as to Plaintiff's Rule 30(b)(6) Deposition Subpoena to Certified Medical Consultants Inc. (ECF No. 18); (3) Defendant State Farm's Motion for Protective Order as to Plaintiff's Rule 30(b)(6) Deposition Subpoena to State Farm (ECF No. 19); (4) Plaintiff's Countermotion to Compel Production of Documents (ECF No. 27); and (5) Defendant State Farm's Motion for Protective Order as to Plaintiff's Second Rule 30(b)(6) Deposition Subpoena to Certified Medical Consultants Inc. (ECF No. 21) are **granted**, in part, and **denied**, in part as follows:

1. To the extent not already produced, Defendant and/or Certified Medical Consultants shall produce:

(a) all documents that were provided to Dr. Basu by State Farm and Certified Medical Consultants relating to her review of Plaintiff's injuries and medical treatment and expenses;

(b) all non-privileged communications between State Farm, Certified Medical Consultants, and/or Dr. Basu relating to the medical review of Plaintiff's injuries and medical treatment and expenses;

(c) Form 1099s issued to Dr. Basu by Certified Medical Consultants for services provided to State Farm in the past five years;

(d) Form 1099s that Certified Medical Consultants received from State Farm during the past five years;

(e) copies of other medical records review reports prepared by Dr. Basu on behalf of State Farm,

in connection with uninsured/underinsured motorist claims, during the past five years. The identities of the insured/claimants and personal identification information such as social security numbers and dates of birth shall be redacted from the reports;

(f) the written contract between State Farm and Certified Medical Consultants pursuant to which the medical report of Dr. Basu regarding Plaintiff was obtained. If State Farm or Certified Medical Consultants claim that the contract contains trade secrets or confidential proprietary information, they may move for a protective order governing its production;

2. Plaintiff may depose Certified Medical Consultants and/or State Farm regarding the selection of Dr. Basu to perform the medical records review of Plaintiff's claim.

3. Within fourteen (14) days of this order, the parties shall file a revised proposed stipulated protective order governing the production of documents that Defendant asserts are trade secrets, confidential, proprietary information, or private, confidential personal information of its employees or other insureds. If the parties are unable to agree on the terms of a stipulated protective order, then within twenty-one (21) days of this order, Defendant State Farm shall file a motion for protective order which sets forth all necessary facts and law demonstrating good cause for entry of the protective order.

4. Following the entry of a stipulated protective order, or the Court's decision on Defendant's motion for protective order, Defendant shall:

(a) produce the remaining training or claims manual documents regarding the handling of uninsured motorist claims;

(b) provide deposition testimony regarding policies and procedures governing audits or file reviews of claim files;

(c) provide deposition testimony regarding the training and discipline—with respect to claims handling—of the employees who handled Plaintiff's underinsured motorist claim; and

(d) provide deposition testimony regarding computer programs that were used by State Farm employees to evaluate Plaintiff's underinsured motorist claim.

5. In lieu of deposition topic 26, Defendant shall produce to Plaintiff copies of its two most recent annual reports of financial condition filed with or at the direction of the State of Nevada.

. . .

6. Within fourteen (14) days of this order, the parties shall meet and confer regarding the completion of discovery in accordance with this order and shall submit a proposed scheduling order, including the deadlines to complete discovery, file dispositive motions, and file the joint pretrial order.

DATED this 26th day of July, 2017

_____
GEORGE FOLEY, JR.
United States Magistrate Judge